A04A2032. DELONG v. THE STATE.
(606 SE2d 107)

JOHNSON, Presiding Judge.

After having been found in the driveway of a house that was not his, with a bathtub that had been stolen from a neighboring house in the back of his pickup truck, Donald DeLong was charged with burglary, theft by taking and theft by receiving stolen property. He denied the charges and was tried before a jury. The jury found DeLong guilty of theft by receiving stolen property, but not guilty of burglary or theft by taking. The trial court sentenced DeLong to serve seven years on probation. He appeals, challenging the sufficiency of the evidence supporting both the conviction and the imposition of a felony sentence. We find that there is sufficient evidence supporting the conviction for a misdemeanor theft, but there is insufficient evidence to support a felony sentence.

1. DeLong contends that his theft by receiving stolen property conviction must be reversed because there is insufficient evidence that the bathtub was stolen, that he knew it was stolen or that he possessed it. The contentions are wholly without merit.

On appeal from a criminal conviction, the appellant no longer enjoys the presumption of innocence, and the appellate court views the evidence in the light most favorable to the verdict.[1] The reviewing court does not weigh the evidence or determine the credibility of witnesses, but determines only if there is sufficient evidence from which a rational trier of fact could have found the appellant guilty beyond a reasonable doubt of the charged offense.[2]

Viewed in favor of the verdict, the evidence shows that DeLong worked for a plumbing company that had installed bathtubs in houses in the Willow Bend subdivision in Forsyth County. On November 25, 2002, DeLong asked his boss, Jerry English, for permission to leave work early in order to go to his daughter's birthday party. English gave DeLong permission to leave early, and DeLong left work around 5:00 that afternoon.

DeLong, however, did not go to a birthday party. Instead, he and two other men went to Willow Bend, took a bathtub out of an

---

[1] *Grier v. State*, 262 Ga. App. 777 (586 SE2d 448) (2003).
[2] Id.; *Simmons v. State*, 262 Ga. App. 164 (585 SE2d 93) (2003).

unfinished house and put it in the back of DeLong's pickup truck. Shortly after they had finished loading the tub into the truck, Steven Phillips arrived at his home in Willow Bend and saw the men with the bathtub. Phillips was suspicious because construction in Willow Bend had ceased and there had been a series of recent thefts in the subdivision, so he pulled his own vehicle into the neighboring driveway to block the truck. As he pulled into the driveway, Phillips saw DeLong load something into the back of the truck and he saw the other two men get into another truck and flee from the subdivision.

Phillips approached DeLong and asked him what he was doing. DeLong told him that he was moving the tub for Todd Hendricks, who had previously coordinated construction work in the subdivision. Phillips knows Hendricks, so he called him and asked why his men were removing the bathtub. But Hendricks, who was no longer doing work at Willow Bend, said that he knew nothing about the bathtub being removed.

Phillips called the sheriff's department, and eventually a deputy sheriff and a detective arrived at the scene. In the meantime, Hendricks and English, whom DeLong had called, also came to the subdivision. Hendricks denied knowing DeLong, let alone ordering him to remove the tub from the house. English also said that he had not ordered the removal of the bathtub. Inside the house from which the tub had been taken, the detective found that pipes to the bathtub had been cut and that there was water damage to two floors. DeLong was subsequently arrested, and he repeated to authorities his claim that he had helped remove the tub for Hendricks.

> A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.[3]

In the instant case, contrary to DeLong's arguments, there is more than enough evidence from which the jury was authorized to find that the bathtub had been stolen from the house, that DeLong knew or should have known it was stolen, and that he had acquired possession of it. The state's witnesses clearly established that no authority had been given to DeLong or anyone else to remove the tub from the home. And while DeLong has claimed that he took the tub

---

[3] OCGA § 16-8-7 (a).

out of the house for the benefit of Hendricks, the jury had no obligation to believe such a claim. Whether DeLong's explanation of possession of the tub was satisfactory was solely a question for the jury,[4] and as the trier of fact, the jury was justified in concluding that the explanation was not credible.[5] Based on all the evidence, the jury was authorized to find beyond a reasonable doubt that DeLong knowingly possessed the stolen tub that was found in the bed of his pickup truck at the scene of the theft.[6]

2. DeLong asserts that the state failed to introduce adequate evidence that the value of the stolen tub was more than $500, and thus the trial court erred in imposing a felony sentence. We agree.

While value is not an element of the crime of theft by receiving stolen property, it is relevant in order to distinguish between a felony and a misdemeanor for purposes of sentencing.[7] Under OCGA § 16-8-12 (a), a person convicted of theft by receiving stolen property shall be punished for a misdemeanor, however, if the stolen property exceeded $500 in value, then the court may impose a felony sentence of one to ten years.[8]

In this case, the state's only evidence of the tub's value came from David McIlvain, an employee of the builder who oversaw the day-to-day affairs of construction in the subdivision. On direct examination, the prosecuting attorney asked McIlvain the value of the tub, and he responded that such tubs generally cost him around $800. The prosecutor then asked if the value of the tub was $800, and McIlvain responded, "Uh-huh."

It is apparent from McIlvain's testimony that this $800 figure is based solely on his approximation of the purchase price of the tub. While the cost of the property to the owner is relevant to the issue of value, it is not the ultimate determinant.[9] Rather, "[t]he value of property which is the subject of the theft is the *fair cash market value* either at the time and place of the theft or at any time during the receipt or concealment of the property."[10] Evidence of purchase price, standing alone, is insufficient to establish the fair market value of the property.[11]

---

[4] See *Ingram v. State*, 160 Ga. App. 300 (2) (287 SE2d 304) (1981).

[5] *Walsh v. State*, 220 Ga. App. 514, 516 (3) (469 SE2d 526) (1996) (obligation to weigh evidence and determine witness credibility rests solely with the jury).

[6] See *Haney v. State*, 261 Ga. App. 136, 137-138 (1) (581 SE2d 626) (2003).

[7] *Baker v. State*, 234 Ga. App. 846, 848 (507 SE2d 475) (1998).

[8] Id.

[9] Id.

[10] (Emphasis supplied.) Id.

[11] *Waters v. State*, 252 Ga. App. 194, 196 (1) (b) (555 SE2d 859) (2001).

Here, McIlvain did not know the brand of the tub in question and provided no basis for determining its value other than the approximate purchase price. Under these circumstances, the evidence is insufficient to establish that the current fair market value of the tub exceeded $500.[12] However, the evidence does establish that the stolen tub had some value. Accordingly, the seven-year felony sentence imposed by the trial court is hereby vacated, and the case is remanded to the trial court with direction that sentencing for the misdemeanor offense be imposed.[13]

*Judgment affirmed, sentence vacated and case remanded. Smith, C. J., and Phipps, J., concur.*

DECIDED OCTOBER 15, 2004 —
RECONSIDERATION DENIED OCTOBER 26, 2004.

*Banks, Stubbs, Neville & Cunat, Rafe Banks III*, for appellant.
*Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.

---

[12] See *Denson v. State*, 240 Ga. App. 207, 208 (2) (523 SE2d 62) (1999).
[13] See *Waters*, supra; *Denson*, supra.